**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Borges-Bishop,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-08164-PHX-GMS<br><br>**ORDER** |

At issue is the denial of Plaintiff Jennifer Borges-Bishop's Application for Disability Insurance Benefits by the Social Security Administration ("SSA"). The Court has reviewed the briefs and Administrative Record (Doc. 25, "R.") and now affirms the Administrative Law Judge's decision (R. at 18–28) as upheld by the Appeals Council (R. at 4–7).

**I.     BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on December 1, 2016, for a period of disability beginning on May 1, 2016. (R. at 18.) Her claim was denied initially on April 12, 2017, and upon reconsideration on May 23, 2017. (R. at 18.) Plaintiff appeared before the ALJ for a video hearing regarding her claim on April 25, 2019, which the ALJ denied on May 16, 2019. (R. at 18, 28.) On March 31, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 4–7.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: Hashimoto's disease, plantar fasciitis, fibromyalgia, and obesity. (R. at 20.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 27.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 23.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC") and found that "[Plaintiff] had the [RFC] to perform a full range of sedentary work as defined in 20 CFR 404.1567(a)." (R. at 23.) Accordingly, the ALJ found that Plaintiff can perform her past relevant work as a bookkeeper. (R. at 26.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.  ANAYSIS

Plaintiff raises several issues for the Court's consideration. First, Plaintiff contends the ALJ erred at step two of the analysis in determining whether Plaintiff's impairments were nonsevere. (Pl. Br. at 14.) Second, Plaintiff argues the ALJ erred in calculating her RFC. (Pl. Br. at 18–19.) Third, Plaintiff contends that the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 13–14.) Next, Plaintiff argues that the ALJ erred in determining Plaintiff could perform her past relevant work as a bookkeeper. (Pl. Br. at 14–16.) Finally, Plaintiff argues the ALJ erred in rejecting her mother's lay witness testimony. (Pl. Br. at 16–17.)

The Court first finds that the ALJ did not err at step two of the analysis because a finding of severe impairments does not automatically result in a disability finding, as Plaintiff asserts. Second, the ALJ did not err in determining Plaintiff's RFC because the

ALJ considered all relevant evidence in the record. Next the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. Fourth, The ALJ appropriately found Plaintiff could perform her past relevant work as bookkeeper based on the RFC and the vocational expert's ("VE") testimony. Finally, the ALJ provided germane reasons for assigning mixed weight to the lay witness testimony of Plaintiff's mother. For the following reasons, the Court affirms.

### A. The ALJ did not err at step two of the analysis.

The Ninth Circuit Court of Appeals interprets the severity requirement as a "*de minimis* screening device" designed to weed out groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1273 (citing 20 C.F.R. § 404.1520(b) (2014)). Only if the evidence establishes a "slight abnormality that has no more than a minimal effect on an individual's ability to work" should the ALJ end the inquiry at step two. Soc. Sec. Ruling 85-28; *Smolen*, 80 F.3d at 1290. An ALJ's decision to do so shall be affirmed only where it is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff argues that once an impairment has been determined severe, the duration requirement has been met, and the claimant has not continued to engage in substantial gainful activity, the process ends. (Pl. Br. at 14.) Thus, Plaintiff contends because she has medically determined impairments that are severe that meet the duration requirement, and she has not engaged in substantial gainful activity, she is disabled and the ALJ should have made a finding of disability. (Pl. Br. at 14.) As Defendant correctly points out, Plaintiff's analysis errs in two ways. (Def. Br. at 8.) First, Plaintiff's argument assumes that the presence of an impairment at step two establishes a disabling impairment at step three. (Def. Br. at 8.) Second, Plaintiff does not specify which listing is satisfied and generally

argues that she is disabled because she had severe impairments at step two. (Def. Br. at 8–9.)

The Court agrees with Defendant that a finding of severe impairments at step two does not automatically result in a disability finding. (Def. Br. at 8.) And even if a claimant is found to be disabled at step three, the ALJ must still consider at step four whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iii)–(iv). The process does not automatically end when there is a disability finding, as Plaintiff argues. The Court also agrees that Plaintiff's argument falls short because it does not specify which listing is satisfied and instead argues generally that Plaintiff must qualify for disability benefits because she has severe impairments. The Court finds the ALJ did not err at step two of the analysis.

### B. The ALJ did not err in calculating Plaintiff's RFC.

The ALJ found that Plaintiff has Hashimoto's disease, plantar fasciitis, fibromyalgia, and obesity, and Plainitff's RFC limited Plaintiff to a full range of sedentary work. (R. at 23, 25.) It is the ALJ's duty to evaluate the various medical opinions, to navigate the conflicts and ambiguities contained among them, and to determine the claimant's RFC while taking into account all of the evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Further, the RFC is a legal determination, not a medical one; it need not match any particular medical source, and the ALJ is ultimately responsible for determining the RFC. 20 C.F.R. §§ 404.1527(d)(2), 404.1545, 404.1546(c).

Plaintiff suggests the ALJ erred in his analysis because the medical evidence showed Plaintiff's inability to walk on her heels and toes and deformities and pain in her major peripheral joints, including her wrists, hands, ankles, and feet. (Pl. Br. at 19.) Plaintiff also recites her own allegations of symptoms in arguing the ALJ erred in calculating the RFC. (Pl. Br. at 23.) For example, Plaintiff describes how she takes breaks while emptying the dishwasher, she naps up to four hours a day, she cannot drive her son to school, she rests when walking 500 feet, and she has difficulty lifting objects and concentrating. (Pl. Br. at 23; R. at 96–98.)

But Plaintiff is asking the Court to consider only a fraction of the evidence. While the evidence she points to is important and significant, the ALJ considered all available evidence in the record in calculating Plaintiff's RFC. For example, during Dr. Rose Lewis's consultative examination, Plaintiff ambulated without an assistive device and was able to get on and off the examination table on her own. (R. 24, 439.) Dr. Lewis also noted Plaintiff had intact reflexes, full strength, intact sensation, and intact range of motion (R. at 24, 439–40.) Plaintiff was in no acute distress, had no impairment in her gait, had normal balance, and during examinations, had no tenderness or swelling in her feet. (R. at 24, 410, 416, 439–40, 451, 528, 533, 537.) Plaintiff was also cooperative during examinations and had intact memory and fair judgment and insight. (R. at 22, 407, 410, 450–52, 457, 495, 500, 511, 513, 534.) The ALJ also noted that Plaintiff could manage a checkbook, do online and in person shopping, read, spend time with others, care for her personal hygiene, and care for her children. (R. at 21-22, 282–87.) The ALJ provided sufficient evidence from the medical record and Plaintiff's own symptom testimony in making determinations regarding Plaintiff's RFC. And as Defendant correctly points out, Plaintiff cannot establish remand is appropriate by merely asking this Court to interpret her objective allegations in support of her preferred result. (Def. Br. at 12.) The Court finds the ALJ did not err in calculating Plaintiff's RFC.

### C. The ALJ did not err in rejecting Plaintiff's symptom testimony.

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 13–14.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 23.)

Plaintiff bases many arguments for why she should receive disability on her own subjective statements. The ALJ found that the medical evidence, Plaintiff's lack of consistent treatment, and Plaintiff's activities of daily living ("ADLs") conflicted with her symptom testimony. (R. at 24.)

First, the ALJ found that physical examination findings did not support Plaintiff's allegations that her symptoms were debilitating. (R. at 24.) Plaintiff was diagnosed with Hashimoto's thyroiditis in 2012. (R. at 24, 450.) Plaintiff was prescribed medication and experienced fatigue and weight gain. (R. at 24, 457.) An ultrasound showed a thyroid nodule in March 2018, but Plaintiff did not complain of any symptoms and did not indicate she had any hyperthyroid symptoms. (R. at 24, 457.) Plaintiff's physician referred her to an endocrinologist, but Plaintiff did not want the referral. (R. at 24, 457.) Plaintiff did another ultrasound that showed no signs of the thyroid nodule in May 2018, and at this time Plaintiff did not have any symptoms and her thyroid function was in a normal range. (R. at 24, 467.)

Additionally, in February 2017, an examination revealed Plaintiff could ambulate without an assistive device, sit comfortably, and was able to get on and off the examination table. (R. at 24, 439–40.) Plaintiff also had intact reflexes, strength, and sensation in the

upper and lower extremities and her range of motion was intact. (R. at 24, 439–40.) In March 2018, Plaintiff exhibited an equal range of motion in her extremities and was noted to not be in pain despite having tender points in both temples, cervical spine and upper back, lateral deltoids, and bilateral hips. (R. at 24, 459.)

Plaintiff's plantar fasciitis results in pain, swelling, and redness in her feet, and she has tried icing her feet, stretching, inserts, and heel lifts with no improvement. (R. at 24, 403–04.) Her doctor has recommended she get custom orthotics and try steroid injections. (R. at 24, 433.) In December 2016, Plaintiff had an x-ray of her right foot, which showed normal soft tissue, no fractures, unremarkable subtalar joint and calcaneocuboid, a diminutive calcaneal enthesopatic of the sole of the right foot. (R. at 24, 435.) In February 2017, Plaintiff had tenderness of the sole of her right foot. (R. at 24, 440.) In August 2017, x-rays of her feet showed plantar heel spurs and hallux abducto valgus deformity with cystic changes. (R. at 24, 493.) In February 2019, Plaintiff had no tenderness, no swelling, no effusion, and normal range of motion in her feet, as well as normal gait and balance. (R. at 24–25, 533, 537.) The ALJ described in detail plaintiff's medical record and showed how the medical record conflicted with Plaintiff's symptom testimony. Plaintiff's medical record repeatedly shows her symptoms were not as severe as she alleged and demonstrated how Plaintiff was not always consistent with treatment.

Next, the ALJ also considered Plaintiff's ADLs in determining whether to reject Plaintiff's symptom testimony and found that Plaintiff's ADLs "are not limited to the extent one would expect, given the complaint of disabling symptoms and limitations." (R. at 25.) Plaintiff has two children, and she cooks for them, drives them around, and takes them to school and picks them up from school. (R. at 25, 282.) Plaintiff also reported exercising: in March 2016, Plaintiff indicated she did moderate to strenuous exercise three days a week for 30 to 40 minutes; in December 2016, Plaintiff did moderate to strenuous exercise four days a week for 30 to 40 minutes; and in May 2017 Plaintiff did moderate to strenuous exercise three times a week for over an hour. (R. at 25, 404–05, 503.) In November 2018, Plaintiff asked her doctor to avoid prescribing her medications that may

alter her brain functions because she needed to be active regularly. (R. at 25, 477.) At the same appointment, Plaintiff's doctor recommended that she exercise. (R. at 25, 460, 475, 519, 534, 538.) The ALJ indicated that there were other instances in the record of inconsistencies in Plaintiff's symptom testimony and ADLs, and that her exercise routines reflected one of them. (R. at 25.)

The ALJ described details of Plaintiff's ADLs which included activity regarding her children's schedules and household chores, as well as regimented exercise routines. These examples the ALJ provided are clearly at odds with Plaintiff's symptom testimony. The Court finds the ALJ did not err in rejecting Plaintiff's symptom testimony.

### D. The ALJ did not err in determining Plaintiff is capable of performing her past relevant work.

Step four asks whether the claimant is capable of performing past relevant work and step five asks whether the claimant can perform any work at all. 20 C.F.R. § 404.1520(a)(4)(iv)–(v). She also describes her routine of resting, napping, her inability to do chores, and her body pain as evidence that she could not perform her past relevant work as a bookkeeper, photographer, or waitress. (Pl. Br. at 16.) Plaintiff also cites to her inability to walk heel toe which is a requirement for a waitress. (Pl. Br. at 20.) Plaintiff also described that at the hearing she explained she could not be a bookkeeper because she has lost function in her index finger and thumb and she had pain in her wrists. (Pl. Br. at 20, R at 96–97.) Plaintiff cites to the VE's testimony that Plaintiff could not do her past work of waitress, bookkeeper, or photographer given her limitations. (Pl. Br. at 15–16, 20.) But, as Defendant points out, at the hearing when the ALJ clarified the hypothetical to include a manipulative limitation on a less restrictive frequent basis, the VE responded that Plaintiff could perform the bookkeeper job. (R. at 100; Def. Br. at 17.) Defendant also points out that because the ALJ's RFC indicated Plaintiff could do a full range of sedentary work and the ALJ's hypothetical questioning to the VE was more restrictive, the VE's testimony that Plaintiff could perform past relevant work as a bookkeeper support's the ALJ's finding. (R. at 23, 99–100; Def. Br. at 17.)

Plaintiff also contends that the call operator job that the VE indicated she could perform does not exist in significant numbers. (Pl. Br. at 20–22.) The ALJ did not make a finding that Plaintiff could perform the call out operator job, however. (R. at 27, 99–100.) Plaintiff argues she could not perform past work as a waitress because she cannot walk heel toe, but again, the ALJ did not make a finding Plaintiff could perform past work as a waitress. (Pl. Br. at 16.)

The Court finds the ALJ did not err in finding Plaintiff could perform her past relevant work as a bookkeeper. The ALJ clarified the hypothetical at the hearing and the VE testified that Plaintiff could perform past relevant work as a bookkeeper and the bookkeeper job includes limitations the ALJ clarified in Plaintiff's RFC.

### E. The ALJ did not err in assigning mixed weight to the lay witness opinion of Plaintiff's mother. (Pl. Br. at 16–17.)

Plaintiff contends the ALJ erred in rejecting the lay witness testimony of Plaintiff's mother. (Pl. Br. at 16–17.) An ALJ need only provide a germane reason for rejecting a lay witness's reports. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). If the ALJ provides valid reasons for rejecting testimony by one witness, the ALJ may rely on those same reasons to reject the similar testimony of a different witness, if they are equally valid. *Id.* Thus, an ALJ's valid reasons for rejecting a claimant's symptom testimony may apply with equal force to a lay witness's statements. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ considered the lay witness opinion of Plaintiff's mother, Veronica Borges. (R. at 26.) Ms. Borges offered insight into Plaintiff's abilities and daily limitations. (R. at 26.) The ALJ gave her opinion mixed weight because she offered unique insight into Plaintiff's issues, but she was not impartial because she has an emotional interest in the outcome of Plaintiff's disability case. (R. at 26.) Here, the ALJ did provide a germane reason for rejecting Mr. Borges lay witness opinion. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ could consider "close relationship" with claimant and that lay witness testimony could be "influenced" by "desire to help"). Additionally, Ms. Borges's opinion echoed Plaintiff's own descriptions of her symptoms and limitations. (R. at 20–

26.) Because the ALJ did not err in rejecting Plaintiff's symptom testimony, this was a valid reason for rejecting Ms. Borges's lay witness testimony, as well.

## IV. CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ did not err at step two of the analysis and correctly calculated Plaintiff's RFC. The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. The ALJ concluded Plaintiff could perform her past work as a bookkeeper based on the VE's testimony and Plaintiff's RFC, and the ALJ did not err in assigning mixed weight to the lay witness testimony.

**IT IS THEREFORE ORDERED** affirming the May 16, 2019 decision of the Administrative Law Judge (R. at 18–28), as upheld by the Appeals Council on March 31, 2020 (R. at 4–7).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 27th day of September, 2021.

G. Murray Snow
Chief United States District Judge